UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-62608-BLOOM/Valle

ANDREW S ROBBINS,

    Plaintiff,

v.

OFF LEASE ONLY, INC.,

    Defendant.
_____/

## OMNIBUS ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS AND DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Off Lease Only, Inc.'s ("Defendant" or "Off Lease") Motion for Final Summary Judgment, ECF No. [66] ("Defendant's Motion"), and Plaintiff Andrew Robbins's ("Plaintiff" or "Robbins") Motion for Sanctions, ECF No. [69] ("Plaintiff's Motion"). The Court has carefully reviewed Plaintiff's Motion and Defendant's Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, Defendant's Motion and Plaintiff's Motion are denied.

    **I.    BACKGROUND**

This case involves a dispute arising from Plaintiff's termination by his employer, Off Lease. In the Complaint, ECF No. [1], Robbins alleges that he was terminated as a result of requesting time off under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611 *et seq.*, for a serious medical condition he began to suffer during the two-week period he was given off from work. As a result, Plaintiff asserts claims against Defendant for interference (Count I) and retaliation (Count II) in violation of the FMLA, which prohibits an employer from interfering with,

restraining, or denying the exercise of or the attempt to exercise, any right provided by the FMLA, including leave for a serious health condition. *See* 29 U.S.C. § 2612(a)(1).

Defendant has moved for summary judgment upon Plaintiff's claims, and Plaintiff has requested sanctions based upon Defendant's alleged non-compliance with a discovery order. The Court considers the Motions in turn.

## II.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.  RELEVANT FACTS

#### i.  Employee Handbook

In April 2018, Robbins began working as a Finance Director at Off Lease, a used car dealership with locations throughout Florida. Defendant's Statement of Undisputed Material Facts ("Def.'s SOMF"), ECF No. [65] ¶ 1.[1] Upon commencement of his employment, Plaintiff was provided a copy of Off Lease's Employee Handbook ("Handbook"). *Id*. ¶ 2. Plaintiff was required to review the Handbook, and he agreed to adhere to all the policies and procedures contained in it. *Id*. In pertinent part, the Handbook provides as follows:

> Employees are required to arrive promptly and be ready to work at their scheduled time as mandated by their manager. If an employee arrives 6 minutes after their scheduled time, the employee is considered tardy. It is the Company's policy that all employees arrive on time every day that they are scheduled to work. Tardiness and absenteeism are violations of Company policy and may result in disciplinary action, up to and including termination of employment.
>
> Any employee unable to report to work as scheduled is required to call or text their manager or another pre-designated contact as authorized by their manager. Any employee unable to report to work as scheduled is required to call his or her supervisor or designee at least 60 minutes prior to their scheduled start time, if possible. [. . .]

---

[1] Where a fact is uncontroverted by the opposing party, the Court cites only to the originating Statement of Facts.

2

> Any employee who fails to report to work and/or notify his/her supervisor in advance of the reason for their failure to report to work (no call/no show), will be considered to have abandoned their job and resigned his/her position with the Company.

*Id.* ¶ 3; ECF No. [65-4] at 15. The Handbook also contains a comprehensive FMLA policy, which permits Off Lease employees to take a leave of absence in accordance with FMLA provisions. Def.'s SOMF ¶ 5; ECF No. [65-4] at 18-20.

### ii. Robbins's request for time off

On August 5, 2019, Plaintiff sent a request to his supervisor, Ray Rodriguez ("Rodriguez"), for leave from work for the period of August 19, 2019 through October 1, 2019, in order to travel to Brazil and renew his permanent resident card. Def.'s SOMF ¶ 6; ECF No. [65-5]. Plaintiff's Reply to Defendant's Statement of Undisputed Facts ("Pl.'s Rep."), ECF No. [72] at 1-7, ¶ 6. Ten days later, on August 15, 2019, Plaintiff e-mailed his time off request to Rebecca Radosevich ("Radosevich"), Off Lease's Chief Human Resources Officer. Def.'s SOMF ¶ 7. In his communication to Radosevich, Plaintiff presented what he believed to be three viable options regarding the time he needed to be in Brazil, including (1) resigning his position; (2) remaining at Off Lease and be granted the time off or working remotely; and (3) taking an unpaid leave of absence through October 1, 2019. *Id.* ¶ 8; ECF No. [65-1] at 56, p. 218. Radosevich informed Plaintiff via e-mail on August 15, 2019, that Off Lease would allow him two weeks of time off beginning on August 18, 2019.[2] Def.'s SOMF ¶ 9; ECF No. [65-7]. In the e-mail, Radosevich told Robbins "[p]lease communicate with me while you are away to let me know the status of your return. Have a safe trip and hopefully, you will be able to bring your situation to a successful conclusion." ECF No. [65-7]. According to Robbins, Radosevich also relayed to him prior to

---

[2] Defendant states that Plaintiff would be allowed two weeks off beginning on August 17, 2019, *see* Def.'s SOMF ¶ 9, 13; however, in Radosevich's e-mail to Robbins, she states that "we are granting your request for two weeks beginning on August 18, 2019." ECF No. [65-7].

3

sending the e-mail that he should let her and Rodriguez know if more time was necessary. Plaintiff's Statement of Undisputed Facts ("Pl.'s SOMF"), ECF No. [72] at 7-15, ¶ 12; ECF No. [65-1] at 59, p. 231. According to the Defendant, Plaintiff was expected to be back at work on September 2, 2019 for a mandatory weekly conference call. Def.'s SOMF ¶ 13.

### iii. Robbins travels to Brazil and health concerns begin

Robbins traveled to Brazil on August 18, 2019. Pl.'s SOMF ¶ 13. He attended his appointment and applied for his residency permit on August 21, 2019 in Brazil. *Id*. ¶ 14. Plaintiff testified that he began to feel ill around August 24 or August 25. ECF No. [65-1] at 24, p. 92. He believed the cause to be indigestion. Pl.'s SOMF ¶ 20.

On August 28, 2019, Plaintiff visited the family doctor, who performed a physical assessment, ordered bloodwork, and referred him to a urologist. *Id*. That same day, a state of emergency was declared in Florida as Hurricane Dorian was expected to make landfall on the east coast of Florida. Pl.'s SOMF ¶ 15. Also on August 28, 2019, Robbins informed Radosevich that his permanent resident renewal application had been received and that "everything is looking good now and I will be back to work next week." Def.'s SOMF ¶ 10; ECF No. [65-9]. Plaintiff also sent a message to Rodriguez on August 28, 2019, stating that he would "definitely be back to work next week," and that he would "know for sure which day soon." Pl.'s SOMF ¶ 18; ECF No. [72-11]. Robbins did not tell Radosevich or Rodriguez about his developing health issues at that time.

On August 29, 2019, Plaintiff saw the urologist, who recommended that Plaintiff undergo an ultrasound and colonoscopy, and referred him to a gastrologist. *Id*. ¶ 21. On August 30, 2019, the doctor opined that if Plaintiff traveled to the United States, he potentially would not receive the level of care that he needed, and thus suggested that he may want to remain in Brazil to be diagnosed. ECF No. [65-1] at 77, p. 302.

4

Plaintiff had a colonoscopy on September 2. *Id*. at 76, p. 300. The parties agree that at no time before September 4 did Plaintiff advise Defendant that he was suffering from any type of medical condition. On September 4, 2019, Plaintiff received a diagnosis requiring surgery, and a recommendation that he not travel. *Id*. at 77, p. 302.

### iv. Defendant's expectations regarding Robbins's return to work

According to Defendant, Off Lease expected Plaintiff to be back at work on September 2 for a mandatory weekly conference phone call, Def.'s SOMF ¶ 13, as his two-week vacation ended on September 1, 2019. ECF No. [65-7].[3] The weekly conference phone call took place on September 2, even though it was Labor Day. ECF No. [65-1] at 46, p. 178. Plaintiff did not participate on the call or return to work on September 2, nor did he inform anyone at Off Lease that he would not be coming back to work on that day. Def.'s SOMF ¶¶ 13-14. According to Defendant, despite some closures to the public of Off Lease's physical locations due to Hurricane Dorian, management level employees, including Plaintiff, were required to continue working. *Id*. ¶ 15. Defendant asserts that Plaintiff failed to tell anyone at Off Lease that he had medical concerns and needed additional time off until the afternoon of September 4, 2019. *Id*. ¶ 22.

### v. Plaintiff's expectations regarding his return to work

According to Plaintiff, he notified Defendant that it would take at least some portion of a third week to receive documents and secure a flight. Pl.'s Rep. ¶ 13. Specifically, Plaintiff communicated with both Radosevich and Rodriguez on August 28. In his e-mail to Radosevich on August 28, after telling Radosevich that he would be back to work the following week, he told her further that "[a]s soon as I have my new resident card I will let you know and I will jump on the next flight back." ECF No. [65-9]. Radosevich responded as follows: "Andy – that is great news!

---

[3] As previously noted, Robbins was approved for two weeks of time off beginning on August 18, 2019. ECF No. [65-7]. Two weeks from August 18, 2019 was September 1, 2019.

5

Please keep me updated as to when next week you plan to return. Are you also communicating with Ray?" ECF No. [72-10] at 2. Plaintiff also sent a text message to Rodriguez on August 28, 2019, stating that he would "definitely be back to work next week," that he would "know for sure which day soon," and that he "already sent an email to Rebecca and she knows." Pl.'s SOMF ¶ 18; ECF No. [72-11]. Rodriguez responded, "[t]hat is fantastic news Andy!!!!" ECF No. [72-11]. As a result, Plaintiff believed that he had actual or at least tacit approval to take extra time off. Pl.'s Rep., ¶ 10; Pl.'s SOMF ¶¶ 16, 18. According to Plaintiff, neither Radosevich nor Rodriguez expressed concern that he had communicated a fluid return date in his communications with them. ECF No. [65-1] at 79, p. 313.

In addition, Plaintiff believed he was excused from work on September 2 and September 3. ECF No. [65-1] at 15, p. 54. According to Plaintiff, Off Lease's Miami store was fully closed on Monday, September 2, and he was never told that he was required to be at work or working on September 2. ECF No. [72-14]; ECF No. [65-1] at 14, p. 50. Moreover, Plaintiff believed that the September 2 conference call would not take place because it was a holiday, and he did not realize that a call had taken place on September 2 until after he had already missed it. ECF No. [65-1] at 45, pp. 174-77; ECF No. [72-19]. In addition, the Off Lease Miami location was closed on September 3, and the Finance Directors' weekly conference call was canceled. Pl.'s SOMF ¶ 30; ECF Nos. [72-14]; [72-19]. Moreover, Plaintiff contends that both Radosevich and Rodriguez knew that he was not present on the September 2 conference call, and they took no immediate action or issue with his absence. Pl.'s Rep. ¶ 13. For example, in an e-mail to Plaintiff in the morning on September 4, Radosevich said "I hope all is well with you and that you were able to make it home safely. Can you please give me an update?" ECF No. [72-10] at 2. At the time, Radosevich was aware that Robbins was not on the September 2 conference call, ECF No. [65-8]

at 10, p. 36, yet she did not notify Robbins of any issue with his absence. Plaintiff contends further that he had a flexible schedule with no specific start time or end time during his working days, and in any event, he worked remotely on September 4 and 5. Pl.'s SOMF ¶¶ 4, 30; Pl.'s Rep. ¶ 16.

### vi. Robbins's request for FMLA leave

The parties do not dispute that on the afternoon of September 4, Plaintiff first informed Rodriguez and Radosevich that he was still in Brazil and needed to take additional time off for medical reasons. Def.'s SOMF ¶ 22; Pl.'s SOMF ¶ 34. In response, Radosevich replied "Hi Andy, I am sorry to hear that you are having such health problems. Please keep us updated as to how you are doing. I have copied Kim Luke so that she can send you FMLA paperwork tomorrow. ECF No. [72-10] at 1; Pl.'s SOMF ¶ 36. Radosevich did not inform Robbins that he had abandoned his job. However, according to Defendant, Radosevich was unaware at that time that Plaintiff had not discussed his absence from work for the preceding days with his supervisor. Def.'s SOMF ¶ 23.

### vii. Abandonment and subsequent termination

During the evening of September 4, after Plaintiff contacted Radosevich, and Radosevich stated that she would provide him with FMLA paperwork, several email exchanges took place among Radosevich, Bob Harris ("Harris"), Off Lease's General Manager and Rodriguez's supervisor, and Mark Fischer ("Fischer"), Off Lease's Chief Executive Officer. Radosevich's initial e-mail to Harris and Fischer regarding Plaintiff's request for FMLA leave made no mention of job abandonment or no call/no show on September 2. Pl.'s SOMF ¶ 38. In subsequent e-mails, Radosevich, Harris, and Fischer each expressed skepticism that Plaintiff was suffering from a serious health condition. *Id*. ¶ 39. In one of the e-mails, Fischer questioned how Off Lease could be required to hold Plaintiff's position and referred to Plaintiff as a liar. *Id*. ¶ 40.

On September 5, Radosevich informed Plaintiff that he would not be granted FMLA leave because he had abandoned his job earlier in the week – specifically, that he was expected to be back to work on September 2, he had failed to return, and it was not until three days later that he reached out to let Off Lease know that he was still out of the country. ECF No. [72-23] at 1. As a result, Robbins was considered by Defendant to be a no call/no show for three consecutive days and deemed to have abandoned his job and resigned his position pursuant to Handbook policy. *Id*. Plaintiff was terminated on September 5, 2019, via e-mail from Radosevich. Pl.'s SOMF ¶ 43.

### B.  LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, L.L.C., 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343.

In resolving the issues presented under Fed. R. Civ. P. 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356; *see also Aurich v. Sanchez*, No. 08-80113-CIV, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913 (11th Cir. 1993)). Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

Furthermore, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. *See Hairston*, 9 F.3d

9

at 919; *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *see also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); *Gary v. Modena*, No. 05-16973, 2006 WL 3741364, at *16 (11th Cir. Dec. 21, 2006) (Fed. R. Civ. P. 56 precludes summary judgment where court would be required to reconcile conflicting testimony or assess witness credibility); *Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct.11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so."). Through this lens, the Court considers the Motion.

### C. DISCUSSION

Under the FMLA, eligible employees are entitled to a total of 12 workweeks of leave during any 12-month period because of, *inter alia*, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612 (a)(1)(D). Any eligible employee who takes leave shall be entitled to restoration to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. *See* § 2614. Further, under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). "To preserve the availability of [family and medical leave] rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act[,] and

retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Shanks v. Potter*, No. CV 110-045, 2010 WL 8347107, at *5 (S.D. Ga. Dec. 28, 2010), *aff'd*, 451 F. App'x 815 (11th Cir. 2011) (quoting *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001)) (internal quotation marks omitted).

Defendant argues that it is entitled to summary judgment on Robbins's claim for FMLA interference because he was not an eligible employee entitled to leave. Defendant further argues that Off Lease did not retaliate against Robbins because he had abandoned his job before requesting FMLA leave. In response, Plaintiff argues that the Motion lacks the evidentiary predicate needed to establish the baseline set of undisputed facts. The Court considers each argument in turn.

   **i. FMLA Interference**

To prove a claim of FMLA interference, a plaintiff must demonstrate, by a preponderance of the evidence, the denial of an FMLA benefit to which he was entitled "and that []he 'has been prejudiced by the violation in some way.'" *Evans v. Books-A-Million*, 762 F.3d 1288, 1295 (11th Cir. 2014) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). "The employee need not allege that his employer intended to deny the benefit—the employer's motives are irrelevant." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (quoting *Strickland*, 239 F.3d at 1207) (quotations omitted). Specifically, a plaintiff must show that he is an eligible employee, that his employer was an eligible employer, that he was entitled to leave, that his employer knew or should have known that leave was for a FMLA qualifying reason, and that the employer denied him benefits under the FMLA to which he was entitled. 29 U.S.C. §§ 2612(a)(1)(D), 2615(a)(1); *Drago v. Jenne*, 453 F.3d 1301, 1305-06 (11th Cir. 2006); *Cruz v.*

*Publix Super Mkts., Inc.*, 428 F.3d 1379, 1382-83 (11th Cir. 2005); *Wilson v. NHB Indus., Inc.*, 219 F. App'x 851, 852 (11th Cir. 2007).

Under the FMLA, an "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Furthermore, an eligible employee is "an employee who has been employed for at least 12 months by the employer with respect to whom leave is requested . . .; and for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). Thus, in order to be eligible for FMLA benefits, it is axiomatic that an individual must be an employee.

The crux of Off Lease's argument is that Robbins was no longer an employee, and therefore not an eligible employee, when he requested FMLA leave on the afternoon of September 4, 2019. According to Off Lease, Robbins was granted two weeks' time off, from August 18, 2019 through September 1, 2019, and after the two weeks expired, he failed to show up to work for three consecutive days and failed to contact his supervisors during that time to inform them that he would not return. Therefore, according to the Handbook and policies by which Robbins agreed to be bound, he had abandoned his job and effectively resigned, resulting in an automatic termination.

Plaintiff contends that (1) his absences on September 2 and 3 were excused; (2) he was working remotely while he was in Brazil; (3) he properly notified Rodriguez and Radosevich on August 28 that his return would be delayed; and (4) he was a management level employee with a flexible schedule.

In its Reply, Off Lease makes much of the fact that Robbins admitted that, at a minimum, he was supposed to have returned to work on September 4 and did not. Defendant suggests that even if he did not abandon his job on September 2 and 3, by virtue of his admission, Plaintiff abandoned his job on September 4 when he failed to contact anyone at Off Lease until the

afternoon to request FMLA leave. Defendant also argues that Plaintiff's communications with Radosevich and Rodriguez on August 28 do not evince a request, or a concomitant approval, of additional time off from work.

Upon review, the issue of whether Robbins had abandoned his job is an issue of fact not suitable for disposition upon summary judgment because the determination would require weighing conflicting evidence. Although Defendant argues that nothing but Plaintiff's self-serving testimony substantiates his position, there is nothing improper about Plaintiff's reliance on his own testimony to demonstrate the existence of a genuine issue of material fact. *See United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) ("a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment"). Furthermore, the Court does not agree with Defendant that the facts in this case are uncomplicated or as straightforward as Defendant argues.

First, Robbins's "admission" that he was required to be back at work on September 4 is far from clear. Plaintiff testified to the following at his deposition:

> Q. Regardless of whether there was a flight or not, Off Lease was expecting you to be back in the office on Wednesday, September 4th, correct?
> [. . .]
> A. Unless I called in sick, yes.
>
> Q. And you did not call in sick until – in your words, until the afternoon after you got your diagnosis on September 4th, correct?
>
> A. Correct. Because that's when they concluded that my condition was not well enough to fly.

*Id.* at 30, p. 116. Plaintiff testified further:

> Q. And you knew that they were expecting you to be back in the physical office on September 4th, in the morning, correct?

> A. Not necessarily. Because I worked my own schedule. I'd never had a -- a -- a time that I was due in, or a time that I was due out. If I felt I needed to be there at seven in the morning, I would go early. If I felt I needed to work late that night, sometimes I went later.

*Id.* at 31, p. 119. Plaintiff's contention that he had a flexible schedule is supported by his timekeeping records, which reflect varying arrival times between 8:15 a.m. and 12:52 p.m., ECF No. [72-4], yet there is no indication in the record that this variability was an issue with Defendant prior to September 4 when Robbins requested FMLA leave. In addition, the record reflects that despite not having approved remote access to Off Lease's systems, Plaintiff was nevertheless responding to e-mails and in regular communication with his team while he was in Brazil, and that Rodriguez was aware and raised no issue with it. ECF Nos. [72-11], [72-21]. Moreover, determining whether Plaintiff justifiably believed that, based on his August 28 communications with Radosevich and Rodriguez, he had approval to take additional time off beyond September 2 would require the Court to draw inferences based upon such communications and evaluate Plaintiff's credibility. This, the Court may not do. Moreover, prior to Plaintiff requesting FMLA leave, no documents or other evidence conclusively demonstrates that Defendant "considered [Plaintiff] to have abandoned [his] job and resigned [his] position with the Company" as the Employee Handbook directs.

Defendant's reliance upon *Krutzig v. Pulte Home Corporation*, 602 F.3d 1231 (11th Cir. 2010), is misplaced. In *Krutzig*, the Eleventh Circuit determined that the right to commence FMLA leave is not absolute and that "an employee can be dismissed, preventing h[im] from exercising h[is] right to commence FMLA leave, without thereby violating the FMLA, if the employee would have been dismissed regardless of any request for FMLA leave." 602 F.3d at 1236. However, in *Krutzig*, the plaintiff was subject to a performance improvement plan, and there was unrebutted evidence that the employer decision-maker was not aware of the plaintiff's request for FMLA

14

leave at the time the decision to terminate her was made. *Id*. Here, Defendant has presented no evidence that there were issues with Plaintiff's performance, or he was considered by Defendant to have abandoned his position prior to his request for FMLA leave on September 4. To the contrary, the record reflects that Plaintiff's termination occurred *after* he informed Defendant of the need for FMLA leave, as reflected in the e-mails exchanged among Off Lease's management on the evening of September 4. Moreover, *Krutzig* does not support the proposition that the Court may find as a matter of law based upon an employee handbook that Plaintiff was no longer an employee of Defendant when he requested FMLA leave.

As such, a genuine issue of material fact as to whether Robbins had in fact abandoned his job on September 4, and therefore whether he was an employee under the FMLA, when he requested FMLA leave.

### ii. FMLA Retaliation

Defendant argues that Robbins cannot establish a prima facie case of retaliation as he never engaged in statutorily protected conduct. This is because Plaintiff abandoned his job, and there was no causal connection between the alleged conduct and adverse employment action.

To establish a prima facie case of FMLA retaliation, "the plaintiff must show that (1) []he engaged in statutorily protected conduct; (2) []he experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *Gilliard v. Ga. Dep't of Corrs.*, 500 F. App'x 860, 864 (11th Cir. 2012). "Unlike an interference claim, an employee 'bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus.'" *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1267-68 (11th Cir. 2008) (quoting *Strickland*, 239 F.3d at 1207).

Case No. 19-cv-62608-BLOOM/Valle

Because the Court has already determined that an issue of fact exists with respect to whether Robbins was an employee when he requested leave under the FMLA, there is necessarily a genuine issue of material fact with respect to whether he engaged in statutorily protected conduct. As such, the Court does not have occasion to consider Off Lease's remaining arguments with respect to his claim for retaliation, and Off Lease is not entitled to summary judgment upon Robbins's claim for FMLA retaliation.

### III.    MOTION FOR SANCTIONS

Plaintiff requests sanctions, including an extension of the pretrial motions deadline, contending that Defendant failed to comply with a discovery order. On July 27, 2020, Plaintiff filed a Motion to Compel, ECF No. [47], seeking the production of non-privileged responsive documents withheld by Defendant on the basis of attorney-client privilege arising from Radosevich's dual role as Chief Human Resources Officer of Off Lease and counsel on employment and labor matters, and that the Court compel Radosevich to appear for a further deposition. Following an *in camera* review of the relevant documents, *see* ECF No. [51], Magistrate Judge Valle entered an order granting in part Plaintiff's request, ordering that Radosevich appear for further deposition, and requiring the production of certain documents or that Defendant appeal her ruling to this Court by August 27, 2020. ECF No. [59].

On August 27, 2020, Defendant appealed Judge Valle's ruling to this Court. *See* ECF No. [61]. On September 18, 2020, Defendant filed its Motion for Summary Judgment, on the deadline for filing dispositive motions. Following further *in camera* review, *see* ECF No. [62], on September 19, 2020, the Court overruled Defendant's objections to Judge Valle's ruling, ordered Defendant to produce the documents by September 22, 2020, and extended the discovery deadline to allow the continued deposition of Radosevich to take place. On September 25, 2020, Plaintiff

16

filed the Motion for Sanctions, contending that Defendant had not provided the requisite documents until September 22, 2020, had failed to make Radosevich available for deposition, and faulting the Court for not addressing his requested extension of the dispositive motions deadline or time for Plaintiff to respond to Defendant's dispositive motions. *See* ECF No. [69] at 2. Upon review, Plaintiff's Motion lacks merit for the three reasons explained below.

First, prior to Plaintiff's Motion, Plaintiff did not request an extension of the dispositive motions deadline or the time in which to respond to the dispositive motion filed by Defendant. Moreover, Plaintiff's Motion was filed after the dispositive motions deadline and he provides only conclusory statements regarding the existence of good cause for his belated request. As such, the request for such an extension in Plaintiff's Motion is untimely, and due to be denied upon that basis alone. *See* Fed. R. Civ. P. 16(b), (e) (stating that scheduling orders "control the subsequent course of the action unless modified by a subsequent order" and may be modified only "upon a showing of good cause"). It was incumbent upon Plaintiff to timely seek an extension of deadlines based upon his apparent view that such documents would be critical to his claims.

Second, Defendant produced the documents on the date ordered by the Court – September 22, 2020 – and thus, Defendant did not fail to comply with this Court's orders. Moreover, to the extent that Plaintiff contends that these documents would permit him to establish sufficient undisputed facts to move for summary judgment as to liability on his interference claim, Plaintiff does not otherwise explain how the documents would permit him to do so, or to which elements of his interference claim they might pertain. As the Court has already determined that summary judgment is improper on the issue presented—whether Plaintiff was an employee at the time he requested FMLA leave—the documents at issue do not alter the Court's conclusion.

Third, in its response to Plaintiff's Motion filed on October 1, 2020, Defendant represents to the Court that Radosevich was deposed by Plaintiff on September 29, 2020. Tellingly, Plaintiff did not file a reply in support of Plaintiff's Motion, nor did he address Defendant's representations in his response to Defendant's Motion. *See* ECF No. [73]. Accordingly, Plaintiff's Motion and request for sanctions are due to be denied.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion, **ECF No. [66]**, is **DENIED**, and Plaintiff's Motion, **ECF No. [69]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 1, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record